| | | |
|---|---|---|
| SALOME DEL SOCORRO FUENTES-DE CANJURA, | § § § | |
| *Petitioner,* | § § | |
| v. | § § | |
| KEVIN McALEENAN, *Acting Secretary of the Department of Homeland Security*; MATTHEW T. ALBENCE, *Acting Director of Immigration and Customs Enforcement*; ADRIAN P. MACIAS, *Field Office Director of the El Paso Processing Center*; FRANCES M. JACKSON, *Assistant Field Office Director at the El Paso Processing Center,* | § § § § § § § § § § | EP-19-CV-00149-DCG |
| *Respondents.* | § § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Respondents Kevin McAleenan, Matthew Albence, Adrian P. Macias, Frances M. Jackson's "Motion to Dismiss and Motion for Summary Judgment" ("Motion") (ECF No. 11) filed on July 22, 2019. Therein, Respondents ask the Court to dismiss Petitioner Salome Del Socorro Fuentes-De Canjura's ("Petitioner") "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241" ("Petition") (ECF No. 1) on the grounds that none of them are proper respondents and Petitioner's constitutional claims are meritless. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Respondents' Motion.

## I. BACKGROUND

Petitioner is a citizen of El Salvador who is currently being detained by Respondents in El Paso, Texas.[1] McAleenan is the Acting Secretary of the Department of Homeland Security

---

[1] Resp.'s Proposed Undisputed Facts ¶ 1, ECF No. 11 [hereinafter, "Resp.'s PUF"]; Pet., Ex. 2 & 3, ECF No. 1.

("DHS").[2] Albence is the Acting Director of United States Immigration and Customs Enforcement ("ICE").[3] Macias is the Former Director of the El Paso Field Office Director for ICE.[4] Jackson is the Assistant Director of the El Paso Field Office Director for ICE.[5]

Petitioner originally entered the United States on February 15, 2006, was ordered removed *in absentia* by an Immigration Judge ("IJ") on July 17, 2006, and was removed to El Salvador on March 17, 2017.[6] Petitioner reentered the United States on October 31, 2017 and was convicted for illegal reentry in violation of 8 U.S.C. § 1326.[7] After she was released from prison for time served, ICE reinstated the prior removal order on November 1, 2017, and took custody over Petitioner on December 20, 2017.[8]

While in custody, Petitioner expressed fear of returning to El Salvador and was interviewed by an asylum officer pursuant to 8 C.F.R. § 208.31.[9] The asylum officer determined that Petitioner had established a reasonable fear of prosecution or torture, and referred the case to an IJ for withholding-only proceedings on January 30, 2018.[10] On April 2, 2018, DHS issued a Decision to Continue Detention stating that Petitioner would remain in custody pending her

---

[2] Pet. at 2, ECF No. 1.

[3] *Id.*

[4] *Id.*; Resp.'s Mot. at 8.

[5] Pet. at 2.

[6] Resp.'s PUF ¶¶ 2–3; Pet. at 4–5, Ex. 2 & 3.

[7] Resp.'s PUF ¶ 4; Pet. at 6.

[8] Resp.'s PUF ¶ 5.

[9] Resp.'s PUF ¶¶ 6–7; Pet. at 6.

[10] Resp.'s PUF ¶¶ 8–9; Pet. at 6.

withholding-only hearing before the immigration court because of her prior removal from the United States.[11] DHS issued another Decision to Continue Detention on June 19, 2018, based on the same grounds.[12] On July 12, 2018, Petitioner's hearing before the IJ on the merits was continued because her application for relief did not contain the required declaration from the Petitioner.[13] On July 25, 2018, the IJ denied Petitioner's application for withholding of removal under 8 U.S.C. § 1231(b)(3), as well as her application for withholding or deferral under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").[14]

Petitioner appealed.[15] On September 24, 2018, and January 7, 2019, DHS issued two more Decisions to Continue Detention stating that Petitioner would remain in ICE custody pending a Board of Immigration Appeals' ("BIA") ruling on her case.[16] On February 27, 2019, the BIA reversed the IJ's finding that Petitioner did not suffer past persecution, and remanded the case back to the IJ to determine whether DHS carried its burden of proof in rebutting the regulatory presumption that Petitioner's life or freedom would be threatened on the basis of the original claim.[17] The BIA declined to address the IJ's denial of protection under CAT.[18]

---

[11] Resp.'s PUF ¶¶ 12–13.

[12] *Id.* ¶¶ 16–17.

[13] *Id.* ¶ 18.

[14] *Id.* ¶¶ 19–22; Pet. at 6.

[15] Resp.'s PUF ¶¶ 21, 23; Pet. at 6.

[16] Resp.'s PUF ¶¶ 24–27.

[17] Resp.'s PUF ¶ 28; Pet. at 6.

[18] Resp.'s PUF ¶ 29.

On March 15, 2019, Petitioner submitted a request to the IJ for a bond hearing—which the IJ denied on April 2, 2019, reasoning that he lacked jurisdiction over her request for bond because her case was governed by 8 U.S.C. § 1231.[19] On April 26, 2019, the IJ issued his Decision and Order of the Court Following Remand, denying once again Petitioner's application for withholding of removal and protestation under CAT.[20] Petitioner again appealed the IJ's decision to the BIA in May 17, 2019.[21] To date, the appeal remains pending before the BIA, and thus, the reinstated removal order has not yet been executed.[22] On June 10, 2019, the Deportation Officer generated Petitioner's 450-day post-custody review ("POCR") and forwarded it to the Supervisory Detention and Deportation Officer for review before submission to Headquarters POCR Unit for revision and decision.[23] That same day, Petitioner filed the instant Petition.

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). In deciding whether a genuine dispute as to

---

[19] *Id.* ¶ 31; Pet. at 7, Ex. 6.

[20] Resp.'s PUF ¶ 32; Pet. at 7, Ex. 7.

[21] Resp.'s PUF ¶ 34; Pet. at 7.

[22] Resp.'s PUF ¶¶ 35, 38–39; Pet. at 7.

[23] Resp.'s PUF ¶ 36.

any material fact exists, a trial court considers all of the evidence in the record and "draw[s] all reasonable inferences in favor of the nonmoving party" but "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation and internal quotation marks omitted). Instead, the court "only 'give[s] credence to the evidence favoring the nonmovant [and] that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (second alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original) (quotation marks and citation omitted). When the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this responsibility by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005).

If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *LHC Grp.*, 773 F.3d at 694 (internal quotation marks and citation omitted). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions,

or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 497 n.20 (5th Cir. 2014) (quotation marks and citation omitted).

## III. DISCUSSION

**A. Jurisdiction Under Section 2241**

As an initial matter, the Court notes that it has proper jurisdiction to consider this matter. Aliens subject to a removal order may file a habeas corpus petition under 28 U.S.C. § 2241 when they wish to challenge their post-removal-period detention on constitutional grounds. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). On May 11, 2005, Congress enacted the REAL ID Act, stripping district courts of jurisdiction over § 2241 petitions attacking removal orders. *See* 8 U.S.C. § 1252 (B)(ii). Nevertheless, district courts may exercise habeas jurisdiction to review challenges to post-removal-period detentions that do not attack removal orders. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 312–13 (2001); *Baez v. Bureau of Immigration & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (*per curiam*) ("Section 106(a) of the [REAL ID] Act does not, however, preclude habeas review of challenges to detention that are independent of challenges to removal orders.").

Further, § 2241 grants district courts "the authority to grant writs of habeas corpus 'within their respective jurisdictions.'" *See Lee v. Wetzel*, 244 F.3d 370, 373 (5th Cir. 2001) (citing 28 U.S.C. § 2241). Hence, a district court has jurisdiction to entertain an alien's habeas petition under § 2241 if that alien is detained within that court's district. *Id.* at 374–75. Petitioner is currently detained at the El Paso Processing Center, within the Western District of Texas, and she is challenging her post-removal-detention on constitutional grounds via § 2241. Therefore, the Court may exercise its habeas jurisdiction over her petition.

## B. Motion to Dismiss

Respondents move to dismiss McAleenan, Albence, Macias, and Jackson on the basis that they are improper parties under *Rumsfeld v. Padilla*, 542 U.S. 426 (2004). Mot. at 8.

Generally, a writ of habeas corpus "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. Thus, the Supreme Court in *Padilla* explained, the "default rule" is that the proper respondent is the party in charge of the facility where the petitioner is being detained, "not the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435. But the Court declined to resolve the question of whether the default rule applied to "a habeas petition filed by an alien detained pending deportation." *Id.* at 435 n.8.

Currently, circuit courts are split on whether the Attorney General may be a proper respondent in this kind of cases, and the Fifth Circuit has not yet provided an answer. *See Nken v. Napolitano*, 607 F. Supp. 2d 149, 158 (D.D.C. 2009) (collecting cases); *Gutierrez-Soto v. Sessions*, 317 F. Supp 3d 917, 927 (W.D. Tex. 2018); *Davis v. Gonzales*, 482 F. Supp. 2d 796, 799 (W.D. Tex. 2006) ("[T]he Supreme Court noted a circuit court split with respect to this very issue—a split on which the Fifth Circuit has not yet taken a position."). Further, several district courts have held that even the Secretary of DHS may be a proper respondent in immigration cases where petitioners challenge their detention "[d]ue to his . . . level of oversight over ICE and the deportation process and removal determinations." *See Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 495 (S.D.N.Y. 2009); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 724–25 (D. Md. 2016); *Carmona v. Aitken*, 14-CV-05321, 2015 WL 1737839, at *4 (N.D. Cal. Apr. 10, 2015); *Bogarin-Flores v. Napolitano*, 12-CV-0399, 2012 WL 3283287, at *2 (S.D. Cal. Aug. 10, 2012); *see also* 6 U.S.C. §§ 202(3), 251(2) (describing the DHS Secretary's authority to affect the detention and removal of alien detainees). *But see Nken*, 607 F. Supp. 2d at 159–60 (concluding

that the Secretary of DHS is not a proper respondent to a habeas petition filed by an alien detained pending deportation); *Zhen Yi Guo v. Napolitano*, 09-CV-3023, 2009 WL 2840400, at *5 (S.D.N.Y. 2009) (rejecting the reasoning in *Farez-Espinoza*).

Respondents have not offered the Court any other binding case law or persuasive reason why it should dismiss the four Respondents beyond citing to *Padilla*, which, as mentioned, explicitly declined to address whether its holding equally applies to a habeas petition filed by an alien detained pending deportation. *See Gutierrez-Soto*, 317 F. Supp. 3d at 927 (citing *Padilla*, 542 U.S. at 435 n.8). As such, the Court finds that Respondents, as movants, have failed to carry their burden of proving that dismissal of all four respondents is proper. Therefore, the Court declines to dismiss the four Respondents at this time. Respondents' Motion to Dismiss McAleenan, Albence, Macias, and Jackson as improper party respondents is denied.

## C. Motion for Summary Judgment

Respondents argue that summary judgment should be granted against Petitioner because she fails to show no significant likelihood of removal in the reasonably foreseeable future pursuant to the framework established by the Supreme Court in *Zadvydas v. Davis*, 553 U.S. 678, 701 (2001). Mot. at 6. Hence, Respondents argue, there is no constitutional violation. *Id.*

### 1. *Reasonableness of a Prolonged Detention under 8 U.S.C. § 1231*

As a preliminary matter, the Court notes that the parties agree that Petitioner's reinstated removal order is final. *See* Mot. at 10; Resp. 5 n.1. They further agree that Petitioner is an alien detained pursuant to 8 U.S.C. § 1231—not 8 U.S.C. § 1226.[24] *See* Mot. at 9–12, 12 & n.1; Resp.

---

[24] The main difference between these two statutes is that while § 1226 deals with detention of aliens *during* removal proceedings—*i.e.*, when the decision over whether the alien is to be removed from the United States is pending, § 1231 deals with detention of aliens *after* removal proceedings are completed—*i.e.*, when a removal order has been issued. *See Sopo v. U.S. Atty. Gen.*, 825 F.3d 1199, 1207 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018).

9 (distinguishing *Demore v. Kim*, 538 U.S. 510, 527 (2003) on the ground that it tackled the issue of mandatory detention under § 1226(c), but Petitioner here has a final administrative order of removal). Therefore, the Court will analyze the reasonableness of Petitioner's detention under § 1231.[25]

Petitioner is detained pursuant to 8 U.S.C. § 1231 because she is an alien subject to a reinstated removal order. Section 1231(a)(5) states that an alien who illegally reenters the United States after having been removed or having voluntarily departed, while under a removal order, shall be removed by reinstating the removal order from its original date. *See* 8 U.S.C. § 1231(a)(5); *see also* 8 C.F.R. § 241.8(a). The statute authorizes the Government to detain aliens ordered to be removed and gives the Government ninety days to remove them from the United States—the "removal period." *Id.* § 1231(a)(1)–(2). After the removal period expires, the Government can either continue to detain these aliens or release them under supervision. *See Demore*, 538 U.S. at 527 (citing 8 U.S.C. § 1232(a)(6)). The Government may detain these aliens beyond the removal period so long as the district director conducts a post-order custody review ("POCR") before the ninety-day removal period expires and the aliens' removal will not

---

[25] The finality of a removal order in the context of detention has split courts over whether to analyze an alien's post-removal-period detention under either § 1226 or § 1231 because the language in § 1226 appears to suggest that the alien may request a bond hearing before an IJ while the removal decision is pending. *Compare Guerra v. Shanahan*, 831 F.3d 59, 61–63 (2d Cir. 2016) (finding that although an alien subject to a reinstated removal order is "clearly removable," § 1226 applies pending the outcome of withholding-only proceedings because it governs detention for aliens whose removal proceedings are ongoing), *with Padilla-Ramirez v. Bible*, 882 F.3d 826, 832 (9th Cir. 2017) (finding that reinstated removal orders are administratively final for detention purposes because withholding-only proceedings do not "diminish or otherwise affect" the finality of removal orders, and thus § 1226 is not implicated), cert. denied sub nom. *Padilla-Ramirez v. Culley*, 139 S. Ct. 411 (2018).

The Fifth Circuit has yet to address this issue. *See Barrera-Romero v. Cole*, 16-CV-00148, 2016 WL 7041710, at *2 (W.D. La. Aug. 19, 2016), report and recommendation adopted sub nom. *Barrera Romero v. Warden, Lasalle Det. Facility*, 16-CV-00148, 2016 WL 7041614 (W.D. La. Dec. 1, 2016) (noting that *Ponce-Osorio* held that reinstated removal orders are not final for purposes of judicial review if withholding-only proceedings are ongoing, but that the opinion did not consider the finality of the removal order in the context of detention).

be accomplished during the removal period. *See* 8 C.F.R. § 241.4(k)(1)(i).[26] If the district

director decides that the aliens should remain in custody pending removal, DHS must continue to

provide periodic reviews for as long as the aliens remain in custody pending removal. *See id.* §

241.4(k).

While the Government may continue to detain aliens under § 1231 after the removal

period expires—pursuant to the above-mentioned procedures, the aliens can still challenge their

detention under the framework established by the Supreme Court in *Zadvydas v. Davis*, 533 U.S.

678, 687–88 (2001). In *Zadvydas*, the Supreme Court concluded that indefinite detention under

§ 1231 presents a "serious constitutional problem" when the statute's goal—"assuring the alien's

presence at the moment of removal"—no longer bears a "reasonable relation" to the alien's

detention when removal was "a remote possibility at best." *Zadvydas*, 533 U.S. at 690.

Therefore, the Supreme Court held that the Government's authority to detain an alien under §

1231 ends "once removal is no longer reasonably foreseeable." *Id.* at 699. But even in such

cases where the Government cannot continue to detain the alien, the alien is still subject to

supervision under § 1231(a)(3).[27] *See id.* at 696.

Accordingly, the Supreme Court recognized that a six-month detention was

"presumptively reasonable" under the statute. *Id.* at 689. For the detention to remain reasonable,

"as the period of prior postremoval confinement grows, what counts as the 'reasonably

---

[26] A POCR consists of a review of the aliens' records and documents submitted by or on behalf of the aliens, which the district director relies on to decide whether the aliens should remain in custody pending removal. *See* 8 C.F.R. §§ 241.4 (k)(1)(i), 241.4(h)(1); *see also id.* §§ 241.4(e)–(f) (outlining criteria for release and factors to be weighed in considering whether to recommend further detention or release of a detainee).

[27] While the language in § 1231 makes no mention of a bond hearing requirement like § 1226, aliens subject to a reinstated removal order may still be released under the terms of supervision in the statute. *See* 8 U.S.C. § 1231(a)(3) (establishing conditions of release after removal period).

foreseeable future' conversely would have to shrink." *Id.* This presumption applies uniformly to all categories of aliens covered by § 1231. *See Tran v. Mukasey*, 515 F.3d 478, 482 (5th Cir. 2008) (citing *Clark v.* Martinez, 543 U.S. 371, 378 (2005)). However, the Supreme Court noted that this presumption does not mean that every alien must be released after six months. *See Zadvydas*, 533 U.S. at 689.

After the presumptively reasonable six-month period expires, aliens can attack the reasonableness of their detention by providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). As such, aliens bear the initial burden of proof. *See Andrade*, 459 F.3d at 543–44. To meet this burden, aliens must allege sufficient evidence establishing "that there is no significant likelihood of removal in the reasonably foreseeable future," and not merely offer conclusory statements suggesting that removal will not occur immediately following the resolution of their appeals. *Id.* (citing *Zadvydas*, 553 U.S. at 701). Once the alien makes that showing, "the Government must respond with evidence sufficient to rebut [it]." *Zadvydas*, 553 U.S. at 701.

Here, Petitioner has been in Respondents' custody beyond the presumptively reasonable six-month period of detention. She argues that her prolonged detention of over twenty months in ICE custody violates her constitutional rights because her removal is not reasonably foreseeable pending her appeal before the BIA. Accordingly, she seeks release from custody, or, at the very least, an individualized hearing to determine her custody status.[28] Pet. at 13; Resp. 6, 11.

---

[28] The same day Petitioner filed her habeas petition, the Deportation Officer generated Petitioner's 450-day POCR and forwarded it to the Supervisory Detention and Deportation Officer for review before submission to Headquarters POCR Unit for revision and decision. Resp.'s PUF ¶ 36. This development renders Petitioner's requested remedy of an individualized hearing to determine her custody status moot. Thus, the Court will only consider Petitioner's other requested remedy: release from custody through the *Zadvydas* framework.

The Court is not persuaded that Petitioner's prolonged detention is unreasonable under *Zadvydas* because she fails to show that her removal is not reasonably foreseeable. Her removal order was reinstated on December 20, 2017. *See* Resp.'s PUF ¶ 5. On January 30, 2018, she expressed fear of returning to El Salvador and applied for withholding of removal and relief under CAT. *Id.* ¶¶ 6–7. DHS has not removed Petitioner pursuant to the reinstated removal order because her withholding of removal and CAT proceedings are still ongoing. *Id.* ¶¶ 38–39.

Detentions under § 1231 can be prolonged beyond the removal period when the alien cannot be removed to a country where "the alien's life or freedom would be threatened." *See Ponce-Osorio v. Johnson*, 824 F.3d 502, 505 (5th Cir. 2016) (citing 8 U.S.C. § 1231(b)(3)). When the alien subject to a reinstated removal order "expresses a fear of returning to the country designated in that order"—like Petitioner has done here, DHS refers the alien to an asylum officer who must "determine whether the alien has a reasonable fear of persecution or torture." 8 C.F.R. §§ 208.31(b), 241.8(e). If the asylum officer determines that the alien "has a reasonable fear of prosecution or torture," the officer then refers the case to an IJ for what is called "withholding-only" proceedings. *See Ponce-Osorio*, 824 F.3d at 505 (citing 8 C.F.R. § 208.31(e)).

In withholding-only proceedings, the IJ's scope of review is "limited to a determination of whether the alien is eligible for withholding or deferral of removal" *to the country designated in the removal order* and "all parties are prohibited from raising or considering any other issues."[29] 8 C.F.R. § 1208.2(c)(3)(i); *see Crespin v. Evans*, 256 F. Supp. 3d 641, 647 (E.D. Va.

---

[29] Section 1231(a)(5) states that the alien's reinstated removal order cannot be reopened or reviewed, "the alien is not eligible and may not apply for any relief under [Chapter 12 of Title 8 of the U.S. Code], and the alien shall be removed under the prior order at any time after the reentry." *See also Vargas v. Gonzales*, 548 U.S. 30, 35 (2006) ("[Section 1231] applies to all illegal reentrants, explicitly insulates the removal orders from review, and generally forecloses discretionary relief from the terms of the reinstated order."). In other words, during withholding-only proceedings, an alien can only challenge

2017). The IJ must withhold deportation only "[i]f the alien shows that it is more likely than not that the alien will suffer persecution or torture in the country of removal." *Crespin*, 256 F. Supp. 3d at 647 (citing 8 C.F.R. § 208.16(d)(1)). Accordingly, the main question in these proceedings is only whether the alien can be removed "to a third country where the alien does not face a reasonable risk of persecution or torture." *Id.* (citing 8 C.F.R. § 208.16(f)). If the IJ concludes that the alien does not have a "reasonable fear of prosecution or torture," the alien can appeal the IJ's decision to the BIA. *See* 8 C.F.R. § 208.31(e). In turn, the BIA's decisions may be reviewed by a court of appeals. *Crespin*, 256 F. Supp. 3d at 647 (citing 8 U.S.C. § 1252(b); 8 C.F.R. § 208.31(e)).

Of course, if aliens seek to exercise their legal right to seek relief regarding removal through the procedures above, this continuing litigation prolongs their detention. *See Okechukwu Mummee Amadi v. Young*, 06-CV-1138, 2007 WL 855358, at *4 (W.D. La. Feb. 12, 2007). But aliens cannot assert a viable constitutional claim when their allegedly unreasonable prolonged detention is caused by their own plight. *See Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003) (collecting cases denying habeas relief to aliens challenging their alleged indefinite detentions that were caused by their own actions).

Here, the delay in Petitioner's removal prolonging her detention has been caused by ongoing withholding-only proceedings, including a remand by the BIA and the subsequent appeal of the IJ's decision on remand. The Court recognizes that Petitioner has a legal right to seek relief over her removal, but the evidence presented shows that Petitioner is the sole cause

---

the determinations made regarding reasonable fear of prosecution or torture, but not the removal order directing the alien to be removed from the United States.

prolonging her detention through continuing litigation.[30] *See Amadi*, 2007 WL 855358, at *4

("[T]he court finds that because petitioner's continuing litigation is the cause of his continued

detention, he cannot convincingly argue that there is no significant likelihood of removal in the

reasonably foreseeable future. Once petitioner's legal proceedings are concluded, it is likely that

he will be removed to Nigeria."). Petitioner has offered no other reason explaining the delay in

her removal besides her own attempts to seek relief from removal to El Salvador.

Further, the facts do not show that the ongoing proceedings will continue indefinitely,[31]

or that serious errors, negligence, or other arbitrary actions have contributed to the delay in

Petitioner's case. *Cf. e.g., Castellanos v. Holder*, 337 F. App'x 263, 268 (3d Cir. 2009) (holding

in part that although the petitioner's detention period lacked a certain end date, the end was still

reasonably foreseeable once removal proceedings were completed); *Diop v. ICE*, 656 F.3d 221,

234 (3d Cir. 2011) (finding that a 35-month detention for withholding-only proceedings was

unreasonable because the delay in removal was caused in part to the IJ's errors, appeals,

remands, and the Government's delay in securing evidence), *overruled on other grounds by*

*Borbot v. Warden Hudson Cty. Corr. Facility,* 906 F.3d 274, 275 (3d Cir. 2018).

Moreover, as Respondents point out, Petitioner has identified no current or potential

diplomatic barriers that could produce "ordinary delays associated with processing [her] claim

for withholding" that would otherwise "trigger the concerns raised in *Zadvydas.*" Mot. at 15

(quoting *Crespin*, 256 F. Supp. 3d at 652). In *Zadvydas*, the aliens detained were in limbo

---

[30] Also, Petitioner's hearing before the IJ on the merits of her withholding-only proceedings was delayed for an additional week because her application for relief did not contain the required declaration from her. Resp.'s PUF ¶¶ 18.

[31] The record shows that the BIA remanded Petitioner's case seven months after her hearing before the IJ. Resp.'s PUF ¶¶ 19, 28. In turn, the IJ made his decision following remand in three months. *Id.* ¶ 32. To date, four months have passed since Petitioner filed her second appeal. *Id.* ¶ 35. Based on these facts, the BIA might be issuing its next decision in about three months.

"because one was not a recognized citizen of any country and the other could not be removed to the proposed country of removal due to the lack of a repatriation treaty with that country." *Id.* (citing *Zadvydas*, 553 U.S. at 684–86). Indeed, the two aliens in *Zadvydas* would have been detained indefinitely because the Government would have been unable to successfully remove them from the United States "even when all the legal issues surrounding their eligibility for removal had been resolved." *Id.* In other words, the likelihood of an alien's removal in the reasonably foreseeable future increases when no diplomatic barriers exist that would prevent the alien's removal from the United States to any third country, even to the country designated in the removal order to which the alien expressed a fear of returning. *See id.*; *Mancera v. Kreitzman*, 16-CV-89, 2016 WL 1249600, at *4 (E.D. Wis. Mar. 29, 2016); *Khemlal v. Shanahan*, 14 CIV. 5186 AJP, 2014 WL 5020596, at *5 (S.D.N.Y. Oct. 8, 2014).

In fact, courts have consistently granted habeas relief in cases where: (1) petitioners acted in good faith and attempted to cooperate with DHS to secure travel documents to finalize their removal; and (2) diplomatic barriers outside of petitioners' control hampered their removal. *See, e.g.*, *Khader v. Holder*, 843 F. Supp. 2d 1202, 1207 (N.D. Ala. 2011) (petitioner was fully cooperative in all efforts to secure travel documents and did nothing to obstruct his removal, but had not been removed because Jordanian authorities refused to issue a travel document); *Khan v. Gonzales*, 481 F. Supp. 2d 638, 642 (W.D. Tex. 2006) (petitioner showed good faith in securing travel documents but had not been removed because the Bangladeshi consulate had not issued a travel document pending a background investigation); *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 46–48 (D.D.C. 2002) (petitioner had done nothing to hamper his removal but had not been removed because the Liberian embassy had refused to issue a travel document). *But see Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002) (denying habeas relief because "the

mere fact that the Egyptian government has taken its time in responding to the INS request for travel documents does not mean that it will not do so in the future.").

Here, the record does not suggest that Petitioner has acted in bad faith or failed to cooperate in securing a travel document. Rather, the record suggests that securing a travel document for Petitioner is not a priority at this stage because Petitioner will not know whether she will be removed to El Salvador or to another country pending the outcome of her withholding-only proceedings. Nonetheless, as Respondents point out, Petitioner has presented no evidence that she cannot not be removed from the United States to El Salvador, or to any third country, based on a diplomatic barrier once her withholding-only proceedings are over.

And finally, although Petitioner's detention of over twenty-months is well-beyond the presumptively reasonable six-month period, other courts have found longer periods were not unreasonable for detention. *See Barrera Romero*, 2016 WL 7041710, at *2 (twenty months); *Mancera*, 2016 WL 1249600, at *4 (twenty-three months); *Garcia v. Lacy*, H-12-3333, 2013 WL 3805730, at *5 (S.D. Tex. 2013) (twenty-seven months); *Kim v. Obama*, 12-CV-173, 2010 WL 10862140, at *3 (W.D. Tex. 2012) (one-and-a-half years).

In sum, the Court concludes that Petitioner's detention is not unreasonable under *Zadvydas* as a matter of law at this time because there is a significant likelihood that her removal is reasonably foreseeable once withholding-only proceedings end. However, the Court recognizes that Petitioner's continued detention may present a future due process problem if the instant withholding-only proceedings take an unusually long period of time that would be inconsistent with due process. *See Crespin*, 256 F. Supp. 3d at 652 (citing *Tijani v. Willis*, 430 F.3d 1241, 1242–43 (9th Cir. 2005)). If so, Petitioner may file another petition for writ of habeas corpus.

## 2. Substantive Due Process Claim

Petitioner asserts that Respondents are violating her substantive due process rights under the Fifth Amendment to the United States Constitution because her "prolonged, unreasonable detention, at the hands of Respondents, has severely restrained her liberty and has not allowed her to move freely within the United States." Pet. at 11. Specifically, Petitioner argues that her prolonged detention infringes on her "right to freedom from restraint" and her "right to freedom to travel throughout the United States." *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997); *United States v. Guest*, 383 U.S. 745, 758 (1966)).

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). "Substantive due process analysis must begin with a careful description of the asserted right." *Id.* at 302 (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. However, the fundamental right to travel freely throughout the United States has been recognized as "a privilege of national citizenship." *See Jones v. Helms*, 452 U.S. 412, 418 (1981).

Petitioner has not identified any authority standing for the proposition that aliens—much less, aliens whom the Government has deemed removable, like Petitioner—enjoy the same fundamental right to travel that United States citizens do. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007); *John Doe No. 1 v. Georgia Dept. of Pub. Safety*, 147 F. Supp. 2d 1369, 1373 (N.D. Ga. 2001). Therefore, the Court only reaches Petitioner's substantive due process claim as to her "right to freedom from restraint."

Constitutional challenges to a statute that purportedly infringes on a fundamental right can be brought either as facial or as-applied challenges. *See United States v. Luna*, 165 F. 3d 316, 319–22 (5th Cir. 1999); *Does #1-7 v. Abbott*, 345 F. Supp. 3d 763, 773 (N.D. Tex. 2018). Facial challenges to statutes are the most difficult challenges "to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Barnes v. State of Miss.*, 992 F.2d 1335, 1343 (5th Cir. 1993); *see also United States v. Anderton*, 901 F.3d 278, 284 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1214 (2019) ("A facial attack on a non-First Amendment statute can prevail only if the statute is unconstitutional in all applications or lacks any 'plainly legitimate sweep.'") (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). A court analyzing a "facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual." *Freedom Path, Inc. v. IRS*, 913 F.3d 503, 508 (5th Cir. 2019) (quoting *Field Day, LLC. v. Cnty. of Suffolk*, 463 F.3d 167, 174–75 (2d Cir. 2006)).

In contrast, an "as-applied challenge . . . requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day*, 463 F. 3d at 174–75; *see Jurek v. Estelle*, 593 F.2d 672, 685 n.26 (5th Cir. 1979), *on reh'g*, 623 F.2d 929 (5th Cir. 1980) (holding that a previous Supreme Court holding that a statute is constitutionally valid on its face does not preclude an as-applied challenge to the statute) (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)).

It is unclear whether Petitioner's substantive due process claim attacking her detention under § 1231 consists of either a facial or as-applied challenge to the statute. For the reasons that

follow, the Court concludes that Petitioner's substantive due process claim fails under either type of challenge.

First, the Supreme Court in *Zadvydas* already determined that 8 U.S.C. § 1231 was not unconstitutional on its face. The Government's authority to detain aliens ordered to be removed derives from § 1231(a)(2). *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title."). Even after the ninety-day removal period has expired, the Government still has authority to either continue to detain such aliens or release them under supervision. *See Demore*, 538 U.S. at 527 (citing 8 U.S.C. § 1232(a)(6)) ("Section 1231(a)(6) provides, among other things, that when an alien who has been ordered removed is not in fact removed during the 90-day statutory 'removal period,' the alien 'may be detained beyond the removal period' in the discretion of the Attorney General."). Moreover, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. This is because "deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character.'" *Id.* (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

While the language in § 1231 is ambiguous as to how long the Government could detain an alien subject to a removal order beyond the removal period, the Supreme Court in *Zadvydas* already resolved this ambiguity by concluding that the statute contained an "implicit [six-month] 'reasonable time' limitation, the application of which is subject to federal-court review." *Zadvydas*, 533 U.S. at 682. Therefore, the Supreme Court held that § 1231 was not

unconstitutional on its face. Petitioner offers no case law or reason disturbing the Supreme Court's holding in *Zadvydas* and thus fails to properly assert a facial challenge to § 1231.

And second, 8 U.S.C. § 1231 as-applied to Petitioner's detention beyond the removal period is not unconstitutional because her detention is still reasonable as a matter of law under *Zadvydas*. In *Zadvydas*, the Supreme Court established the framework by which aliens subject to a removal order may bring an as-applied challenge to § 1231—namely, challenging whether their detention beyond the removal period is unreasonable. *Zadvydas*, 533 U.S. at 689. To show that their detention is unreasonable, aliens must allege sufficient evidence establishing "that there is no significant likelihood of removal in the reasonably foreseeable future," and not merely offer conclusory statements suggesting that removal will not occur immediately following the resolution of their appeals. *See Andrade*, 459 F.3d at 543–44 (citing *Zadvydas*, 553 U.S. at 701). As discussed *supra*, Petitioner's detention beyond the removal period under § 1231 is not unreasonable because there is a significant likelihood that her removal is reasonably foreseeable once withholding-only proceedings end.[32] Therefore, Petitioner's as-applied challenge fails.

As such, the Court finds no constitutional violation of Petitioner's substantive due process rights. Accordingly, the Court GRANTS Respondents' Motion for Summary Judgment.

---

[32] Petitioner also argues that her detention is not narrowly tailored to achieve the Government's interest in ensuring her removal because "there are several less restrictive methods to ensure that Petitioner continues to comply with the requirements imposed upon her by U.S. immigration authorities." Pet. at 12. However, the Supreme Court has recognized "the Due Process Clause does not require [the Government] to employ the least burdensome means to accomplish its goal." *See Demore*, 538 U.S. at 523, 528. Moreover, the Supreme Court already has approved of the terms of supervision in § 1231 for those aliens that may be released after their detention is no longer reasonable. *See Zadvydas*, 533 U.S. at 699–701; 8 U.S.C. § 1231(a)(3) (establishing conditions of release after removal period). At this time, Petitioner's detention is still reasonable under *Zadvydas*, so the Government need not employ less restrictive methods to ensure that Petitioner is present at the moment of removal. *See id.* at 690.

## IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that Respondents' "Motion to Dismiss and Motion for Summary Judgment" (ECF No. 11) is **GRANTED IN PART AND DENIED IN PART**.  The Court **GRANTS** the Motion with respect to Respondents' Motion for Summary Judgment.  The Court **DENIES** the Motion with regard to Respondents' Motion to Dismiss.

**IT IS FURTHER ORDERED** that Petitioner Salome del Socorro Fuentes-De Canjura's "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE.**

**IT IS MOREOVER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this matter after docketing the Final Judgment to be issued separately on this day.

**So ORDERED and SIGNED this _26_ day of September 2019.**

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**